UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Huff, Judges Petty and McCullough
Argued by teleconference

RAYMOND CURTIS

v.      Record No. 2449-13-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE WILLIAM G. PETTY
MARCH 31, 2015

FROM THE CIRCUIT COURT OF WISE COUNTY
Chadwick S. Dotson, Judge

Charles H. Slemp, III (Slemp Law Office, PLLC, on brief), for
appellant.

Steven A. Witmer, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Raymond Curtis was convicted by a jury of distribution of cocaine, a Schedule II controlled

substance, in violation of Code § 18.2-248.  On appeal, Curtis makes two assignments of error:

(1) the trial court erred when it denied his motion for a new trial and motion *in limine* to prevent

the Commonwealth from presenting evidence of Curtis's prior drug use and drug activity; and

(2) the trial court erred when it denied his motion for a new trial and motion *in limine* to prevent

the Commonwealth from introducing testimony concerning types of cocaine, a drug problem in

Wise County, and the drug culture.  For the following reasons, we affirm the decision of the

circuit court.

I.

Because the parties are fully conversant with the record in this case and this

memorandum opinion carries no precedential value, we recite only those facts and incidents of

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

the proceedings as are necessary to the parties' understanding of the disposition of this appeal. "On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)).

On February 13, 2012, Missy Smith, an informant for the Big Stone Gap Police Department, called Curtis to ask if he could get her a "50."[1] Curtis agreed to provide her the drugs. Smith then called Officer Johnson, a Sergeant for the Big Stone Gap Police Department, for whom she had performed controlled buys before, and told him about the call with Curtis. Officer Johnson met with Smith that evening, searched her, and set her up with audio and video recording equipment so that he could record the controlled buy. Officer Johnson gave Smith $50 with which she would purchase the cocaine from Curtis. Smith then met Curtis at the backdoor of the apartment building where Curtis lived. Smith bought what was later determined to be a rock of cocaine from Curtis. Smith returned to Officer Johnson, who retrieved the recording equipment and the cocaine, and paid Smith $50.

On July 25, 2012, a grand jury indicted Curtis for three counts of distribution of cocaine, a Schedule II substance, in violation of Code § 18.2-248. A jury found Curtis guilty of one count of that charge, and on January 10, 2014, he was sentenced to six years of incarceration.

II.

Curtis assigns error to two admissibility rulings of the trial court; we will address them in turn below. "Generally, the admissibility of evidence is within the discretion of the trial court and we will not reject the decision of the trial court unless we find an abuse of discretion." Midkiff v. Commonwealth, 280 Va. 216, 219, 694 S.E.2d 576, 578 (2010).

_____

[1] A "50" is $50 worth of crack cocaine.

A. Prior Drug Use and Drug Activity of Curtis

First, Curtis argues that the trial court erred when it denied his motion for a new trial and motion *in limine* to prevent the Commonwealth from presenting evidence of prior drug use and drug activity of Curtis. We disagree.

"It is well settled that evidence of other crimes or bad acts of an accused is generally inadmissible in a criminal prosecution." Wilkins v. Commonwealth, 18 Va. App. 293, 297, 443 S.E.2d 440, 443 (1994) (en banc). "The purpose of this rule is to prevent confusion of offenses, unfair surprise to the defendant and a suggestion of 'criminal propensity,' thus preserving the 'presumption of innocence.'" Crump v. Commonwealth, 13 Va. App. 286, 289, 411 S.E.2d 238, 240 (1991) (quoting Lewis v. Commonwealth, 225 Va. 497, 502, 303 S.E.2d 890, 893 (1983)). There are numerous exceptions to this rule, however. As this Court noted in Dunbar v. Commonwealth, 29 Va. App. 387, 390, 512 S.E.2d 823, 825 (1999) (quoting Lafon v. Commonwealth, 17 Va. App. 411, 417, 438 S.E.2d 279, 283 (1993)),[2] "Among the exceptions to the general rule against admissibility, the accused's intent 'may be shown by prior bad acts evidence when relevant to prove a material element or issue of the crime charged.' Such evidence is admissible to show, *inter alia*, the intent with which a crime is committed." See also Haskins v. Commonwealth, 44 Va. App. 1, 10, 602 S.E.2d 402, 406 (2002) (allowing admittance of prior drug use to support an inference that appellant knew cocaine when he saw it). "Evidence of 'other crimes' is relevant and admissible if it tends to prove any element of the offense charged. Thus, evidence of other crimes is allowed when it tends to prove motive, intent, or knowledge of the defendant." Guill v. Commonwealth, 255 Va. 134, 138, 495 S.E.2d 489, 491 (1998) (citation omitted).

---

[2] We note that the applicable Virginia Rule of Evidence, Rule 2:404(b), was not in effect until July 2, 2014, after the date of appellant's trial. Thus, it does not apply.

Furthermore, witness testimony of prior drug-related dealings with an appellant is admissible when it is probative of the witness' relationship with the appellant while the witness was involved in the conduct for which the appellant is now on trial. Doss v. Commonwealth, 59 Va. App. 435, 453, 719 S.E.2d 358, 367 (2012). In Doss, the appellant challenged the admissibility of testimony of the appellant's cocaine supplier, Michael Cox. Id. at 444-45, 719 S.E.2d at 363. Cox testified that, among other things, he supplied appellant with cocaine during the time that another witness, a confidential informant, executed two controlled buys with the appellant. Id. at 445, 719 S.E.2d at 363. Cox also testified as to conversations he had with appellant about the informant purchasing drugs from appellant. Id. Appellant argued that Cox's testimony should not have been admitted because Cox did not have knowledge of the two controlled buys between the informant and the appellant. Id. at 452, 719 S.E.2d at 366. This Court held that Cox's testimony was correctly admitted because it was "highly relevant to the charges at issue in [that] case in that it confirmed [the informant's] relationship with the appellant and appellant's participation in the drug trade with [the informant]." Id. at 453-54, 719 S.E.2d at 367. "Accordingly, the probative value of Cox's testimony outweighed the incidental prejudice inherent in the evidence of prior 'bad acts.'" Id. at 454, 719 S.E.2d at 367.

As in Doss, the testimony at issue here was probative of confirming Smith's relationship with Curtis. The following exchange occurred between the Commonwealth's attorney and Smith regarding her relationship with Curtis.

> Q: Have you ever done drugs with the Defendant?
> A: Yes.
> Q: Have you ever done cocaine with him?
> A: Smoked crack.
> Q: Have you ever bought crack from him?
> A: Yeah.
> Q: Prior to February 13th—
> A: Yes.
> Q: —of 2012?
> A: Yes.

Thus, Smith provided background information of her relationship with Curtis to establish the legitimacy of her testimony regarding the controlled buy that was the subject of Curtis's ultimate conviction. Her testimony demonstrated her ability to correctly identify him as the person who sold her the cocaine and to show that Curtis was aware of the character of the substance he sold.[3] In Doss, Cox's background testimony was admitted even though he was not the one who actually purchased the drugs from the appellant. Unlike the witness in Doss, Smith actually participated in the controlled buy at issue. Therefore, we hold that the probative value of Smith's testimony outweighed any incidental prejudice inherent in the evidence of prior "bad acts."

Furthermore, we note that even if the trial court committed error by admitting Smith's testimony, that error was harmless. "The harmless error check on judicial power has never been a begrudged limitation, but rather one favored by Virginia courts, because it grows out of the imperative demands of common sense, and consequently has been deeply embedded in our jurisprudence." Kirby v. Commonwealth, 50 Va. App. 691, 699, 653 S.E.2d 603-04 (2007) (citations and internal quotation marks omitted). We explained the harmless error doctrine in some detail in Kirby, 50 Va. App. at 698-99, 653 S.E.2d at 603-04:

> A criminal defendant "'is entitled to a fair trial but not a perfect one,' for there are no perfect trials." Brown v. United States, 411 U.S. 223, 231-32 (1973) (citations omitted). "No litigant has the right to demand more, and no Commonwealth ought to give less." Walker v. Commonwealth, 144 Va. 648, 652, 131 S.E. 230, 231 (1926). Absent an error of constitutional magnitude, "no judgment shall be arrested or reversed" when "it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached . . . ." Code § 8.01-678.

$$* \quad * \quad * \quad * \quad * \quad * \quad *$$

---

[3] We note that Curtis insisted throughout the proceedings, and even after conviction, that he did not sell cocaine to Smith during the controlled buy, but actually sold her Lortab. Therefore, the question of Curtis's knowledge that he was selling cocaine was a genuine issue in the proceedings.

> It is "the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless" lest they "retreat from their responsibility, becoming instead impregnable citadels of technicality." United States v. Hasting, 461 U.S. 499, 509 (1983) (citation omitted).

It is well settled that the erroneous admission of the type of evidence at issue in this case is non-constitutional error. Estelle v. McGuire, 502 U.S. 62, 68-70 (1991). Thus, in order to determine whether such non-constitutional error was harmless, we must examine the record to determine if "it plainly appears from the facts and circumstances" of this case that the "error did not affect the verdict." Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (en banc) (setting forth standard for non-constitutional error pursuant to Code § 8.01-678). We can come to that conclusion here because we conclude, "without usurping the jury's fact finding function, that, had the error not occurred, the verdict would have been the same." Id. at 1006, 407 S.E.2d at 910.

Here, the Commonwealth presented ample evidence to meet its burden of proving beyond a reasonable doubt that Curtis distributed cocaine. The trial court's statement in denying the defense's motion to set aside the verdict is particularly telling: "And as a matter of fact, this [c]ourt finds that the evidence was overwhelming in favor of Defendant's guilt on that charge."

Even putting aside Smith's testimony about her relationship with Curtis, the jury heard the testimony of Officer Johnson that he coordinated the controlled buy with Smith, he met with her before the buy to set her up with audio and video recorders, and then he retrieved the cocaine and recorders from her right after the buy. Moreover, the jury watched the video recording of the transaction between Curtis and Smith. The video depicted Smith meeting with Curtis, whose face was clearly visible, and handing Smith a small baggie containing a white, round substance, which Smith referred to as a "50." Smith then took the bag, put it in her purse, and handed Curtis a fifty-dollar bill. The jury also heard the testimony of Stephen Houck, the forensic

- 6 -

scientist who analyzed the substance Smith purchased from Curtis. Mr. Houck confirmed that the substance was cocaine, a Schedule II controlled substance. Thus, there was ample evidence presented at trial to support a finding of guilt regardless of any alleged error in the admission of aspects of the informant's testimony.

### B. Types of Cocaine, Drug Problems in Wise County, and Drug Culture

Next, Curtis argues that the trial court erred when it denied his motion for a new trial and motion *in limine* to prevent the Commonwealth from introducing testimony concerning types of cocaine, a drug problem in Wise County, and the drug culture. We disagree.

The Supreme Court, in Bunting v. Commonwealth, 208 Va. 309, 314, 157 S.E.2d 205, 208 (1967), outlined the standard for evaluating the admissibility of testimony like that at issue here:

> Evidence which has no tendency to prove guilt, but only serves to prejudice an accused, should be excluded on the ground of lack of relevancy. For evidence to be admissible it must relate and be confined to the matters in issue and tend to prove an offense or be pertinent thereto. Evidence of collateral facts or those incapable of affording any reasonable presumption or inference on matters in issue, because too remote or irrelevant, cannot be accepted in evidence.

See also Rule 2:403(a) (noting that relevant evidence may be excluded "if the probative value of the evidence is substantially outweighed by (i) the danger of unfair prejudice, or (ii) its likelihood of confusing or misleading the trier of fact"); Rule 2:803(6) (enacted by 2012 Acts chs. 688, 708).

Curtis argues that testimony regarding the different types of cocaine was improper. However, Officer Stallard merely explained what it means to cut crack or rock, which is what was done to the substance Smith purchased from Curtis. Next, Curtis argues that Officer Stallard's explanation of how the different types of cocaine are ingested was improper and prejudicial. Officer Stallard noted that some types are "snorted through a straw or some type of

- 7 -

device up through the nostrils, or injected intravenously." He then noted that crack or rock cocaine is smoked. This testimony, Curtis alleges, is "closely analogous" to the expert testimony in Smith v. Commonwealth, 223 Va. 721, 292 S.E.2d 362 (1982). The expert witness in Smith testified as follows:

> In my opinion the lysergic acid diethylamide, LSD, is a very potent drug. Most drugs are given in milligram amounts. Okay. Most drugs like valium, aspirin are given in milligrams . . . which is about a billionth of an ounce. In LSD the concentration that you need to take is one, is micrograms, that's one trillionth of an ounce. *That is one hundred times more potent that most of your drugs right off the bat*. The effect that it actually does, it is called a hallucinogenic and *it causes your senses to become very distorted. It can make you do some very erratic things, and it's quite unpredictable in its effects. You may do some very bizarre things. The effects of LSD has been reported to cause a person* from, or hallucinogenics in general, I should say, have been, have made people go as far as *to tear their eyes right out of their sockets, chew off an arm, jump out of windows, do some really . . . bizarre things*.

Id. at 722-23, 292 S.E.2d at 363 (emphasis added). The Supreme Court found the testimony in Smith to be irrelevant and prejudicial, noting that "[t]o permit evidence respecting extreme horrors which may result from the use of illegal substances diverts the jury from its principal inquiry and injects an element of passion into the trial prejudicial to the accused." Id. at 724, 292 S.E.2d at 364.

Officer Stallard's brief explanation of the different types of cocaine and vague explanation of how they are ingested was nothing like the extensive testimony in Smith about the specific *effects* of ingesting certain drugs. We decline to hold that Officer Stallard's superficial testimony injected "an element of passion into the trial prejudicial to the accused."

Curtis also argues that "[t]he undercurrent of [Officer Stallard's] entire testimony was a review of the efforts of the Wise County Task Force to deal with the 'problem' of drugs in

- 8 -

Wise." Again, we disagree. In fact, in our review of the transcript, we find Curtis's characterization of Officer Stallard's testimony to be grossly overstated.

Here, the record contains no testimony reviewing "the efforts of the Wise County Task Force to deal with the 'problem' of drugs in Wise." The only reference Officer Stallard made that could be construed as a reference to a "drug problem" in Wise County was when he stated that over 400 of the 2,000 drug investigations he has worked over the last twenty-one years while he was on the Drug Task Force involved cocaine. There was otherwise no reference to a drug problem in Wise County. This information was merely offered to demonstrate the experience and credibility of the witness. Thus, we find no merit to Curtis's assertion that the trial court improperly admitted evidence of a drug problem in Wise County.

Curtis also takes issue with Officer Stallard's testimony regarding "the drug culture." The only testimony relating to "drug culture" we can discern was Officer Stallard's explanation of how one becomes a confidential informant, their usefulness, and the reliability of their knowledge of certain drugs. However, this testimony was probative of explaining to the jury Smith's role in the case as well as the legitimacy of her testimony. Therefore, the trial court did not abuse its discretion in admitting Officer Stallard's testimony.

### III.

For the foregoing reasons, we affirm the decision of the circuit court.

<u>Affirmed.</u>